IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUTH B. MENKIN                  :          CIVIL ACTION
                                :
          v.                    :
                                :
UNITED STATES OF AMERICA, et al. :          NO. 14-919


MEMORANDUM

Bartle, J.                                      April 1, 2015

          Plaintiff Ruth B. Menkin has sued the United States
under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.
§§ 1346(b)(1), 2671 et seq., for negligence as a result of personal
injuries she suffered from a slip and fall while attempting to pass
through security at the Philadelphia International Airport.[1]  The
Government moves to dismiss the action for lack of subject-matter
jurisdiction or, if jurisdiction exists, seeks summary judgment in
its favor pursuant to Rule 56 of the Federal Rules of Civil
Procedure.[2]

_____

[1]  Plaintiff has also sued the City of Philadelphia.  It has now
been dismissed as a result of court approval of a stipulation of
the parties.

[2]  The Government appears to have conflated subject-matter
jurisdiction and the merits, simply seeking summary judgment
which can only be granted on the merits.  A challenge to the
court's subject-matter jurisdiction is properly brought under
Rule 12(b)(1) of the Federal Rules of Civil Procedure on a
motion to dismiss.  See 10 Charles Alan Wright & Arthur R.
Miller, Federal Practice & Procedure § 2713.  We therefore
interpret the Government's motion as one to dismiss under that

I.

The Government first contends that the court lacks
subject-matter jurisdiction because sovereign immunity protects it
from suit.

The FTCA waives the sovereign immunity of the United
States to the extent provided in the Act.  Ali v. Fed. Bureau of
Prisons, 552 U.S. 214, 217-18 (2008).  All waivers must be strictly
construed in favor of the Government.  Lane v. Pena, 518 U.S. 187,
192 (1996).  Under 28 U.S.C. § 1346(b)(1), actions against the
Government are allowed for personal injuries, loss of property or
death resulting from the negligence of "any employee of the
Government while acting within the scope of his office or
employment, under circumstances where the United States, if a
private person, would be liable to the claimant in accordance with
the law of the place where the act or omission occurred."  The
remedy under § 1346(b)(1) is exclusive and precludes an action
against the employee.  28 U.S.C. § 2679(b)(1).

The Government's waiver of sovereign immunity for
employee negligence is not total.  Under 28 U.S.C. § 2680(a),
liability shall not attach to:

> Any claim based upon an act or omission of
> an employee of the Government, exercising
> due care, in the execution of a statute or
> regulation, whether or not such statute or

rule or, in the alternative, for summary judgment in its favor
under Rule 56.

> regulation be valid, or based upon the
> exercise or performance or the failure to
> exercise or perform a discretionary function
> or duty on the part of a federal agency or
> an employee of the Government, whether or
> not the discretion involved be abused.

28 U.S.C. § 2680(a).

The Government argues that this discretionary function exception applies here.  If it does, this court has no subject-matter jurisdiction over the claim.  See S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 330 (3d Cir. 2012).  While plaintiff has the burden to establish that her claim is within the scope of the Government's waiver of sovereign immunity, the Government has the burden of proving that the exception to the waiver pertains and thus that no subject-matter jurisdiction exists.  Id. at 333.

In considering a factual attack on subject-matter jurisdiction such as this one, the court is permitted to consider the record to make factual findings that are decisive to determining jurisdiction.  CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008).  The court is "to weigh the evidence and satisfy itself as to the existence of its power to hear the case.... [N]o presumptive truthfulness attaches to [the] ... allegations [of the party with the burden of proof], and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

-3-

claims." <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).  In a factual attack such as the one before the court, "the split between jurisdiction and the merits is not always clear." <u>CNA</u>, 535 F.3d at 141.

II.

Recognizing that the Government has the burden of proof on the applicability of the discretionary function exception and the lack of subject-matter jurisdiction, we find the following facts for jurisdictional purposes.  Plaintiff had been in the Philadelphia area to celebrate her 90th birthday with family members.  On July 31, 2011, her grandson drove her to the Philadelphia International Airport where she had booked a flight back to Fort Lauderdale, Florida where she resided.  Like everyone else who flies these days, she was required to pass through an airport security checkpoint operated, maintained, and controlled by the U.S. Transportation Security Administration ("TSA").

As she neared the Advanced Imaging Technology scanner ("AIT") through which she would have to walk before proceeding to her gate, TSA personnel instructed her to place her belongings including her cane on a conveyor belt feeding into an x-ray machine.[3]  She followed the protocol and situated not only her cane but also her large roller bag, her purse, and her shoes as

_____

[3]   TSA uses the AIT to screen passengers for metallic and nonmetallic objects.

directed.  She then made her way forward to await her turn through
the AIT.  At that point she did not have the aid of her cane and
braced herself briefly on a stanchion that was standing next to the
x-ray machine.  She showed a TSA employee a tube of lipstick that
she had.  After she placed it back in her pocket, she lost her
balance, grabbed hold of a second stanchion that was not secured to
the floor, and fell.  She sustained a severe fracture to her arm
from the impact.

III.

We must first identify the conduct at issue in
determining whether the discretionary function exception
applies.  S.R.P. ex rel. Abunabba v. United States, 676 F.3d
329, 332 (3d Cir. 2012).  Here, plaintiff takes issue with the
requirement that she place her cane on an x-ray conveyor belt
without TSA providing her with a pre-screened substitute cane or
otherwise offering her assistance.  She also maintains that the
stanchion that fell with her should have been firmly secured to
the floor.  In essence, the relevant conduct is the operation of
an airport security screening checkpoint without offering or
providing her with ambulatory assistance after disallowing her
to use her cane.

We determine the applicability of the discretionary
function exception using a two-step analysis.  First, "a court
must determine whether the act giving rise to the alleged injury

-5-

and thus the suit involve[d] an element of judgment or choice."
Id. at 333 (quotation marks omitted) (quoting Merando v. United
States, 517 F.3d 160, 164 (3d Cir. 2008)).  If a specific
statute, regulation, or policy prescribes a course or action
that an employee must take, the exception does not apply because
"the employee has no rightful option but to adhere to the
directive."  Id. (quoting Berkovitz v. United States, 486 U.S.
531, 536 (1988)).

        If no such mandate exists, however, the second step of
the analysis requires a court to determine whether the
challenged conduct is "of the kind that the discretionary
function exception was designed to shield."  Id. (quoting Gotha
v. United States, 115 F.3d 176, 179 (3d Cir. 1997)).  The
exception shields from judicial review governmental decisions
"grounded in considerations of social, economic, and political
policy."  Id. (quoting United States v. Gaubert, 499 U.S. 315,
323 (1991)).  The focus is on the nature of the conduct in
question, not the subjective intent of any agent or employee.
Id.

        In this case, TSA has statutory authority to conduct
day-to-day security screenings for air travel in the United
States.  49 U.S.C. §§ 114(d)-(f).  Congress has also charged TSA
with the power to "inspect, maintain, and test security
facilities, equipment, and systems."  Id. § 114(f)(9).  A TSA

official has testified in this action that the agency is tasked with "ensur[ing] the safety of the traveling public by checking their bags, whether they be carry-on or checked bags, and to screen them to make sure they don't have anything that is harmful that could damage or destroy a plane."

Neither party has cited any statute, regulation, or policy governing how TSA is to conduct its security procedures in the case of an air traveler who uses a cane. As a result, TSA's decision to require a person to divest herself of her cane for x-ray scanning without supplying her ambulatory support or other assistance, and its failure to secure a stanchion to the floor "involve[] an element of judgment or choice." S.R.P., 676 F.3d at 333 (quotation marks omitted). We must therefore determine whether TSA's inattention to those needing a cane to help in walking is grounded in public policy considerations such that it falls within the discretionary function exception. Id. Because this inquiry is highly fact-specific, we turn to the substantial case law that has developed on the subject. See Mitchell v. United States, 225 F.3d 361, 365 (3d Cir. 2000). We note at the outset, as the precedents demonstrate, that the discretionary function exception is not without its limitations. See, e.g., Dalehite v. United States, 346 U.S. 15, 27-28 & n.19 (1953), overruled in part on other grounds by Rayonier, Inc. v. United States, 352 U.S. 315 (1957).

-7-

Our Court of Appeals has had several occasions to consider what conduct is "of the kind that the discretionary function exception was designed to shield." S.R.P., 676 F.3d at 333 (quoting Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997)). In Gotha v. United States, an independent contractor, Martin-Marietta Company, had been performing work on the land portion of a naval base in the United States Virgin Islands. An employee of the independent contractor was injured when she slipped and fell on a pathway on the base. The pathway was unpaved, steep, and unlighted, and had no handrail. As the employee was walking down the pathway at 5 a.m., she lost her footing in the pre-dawn darkness and injured her ankle.

The court held that the Government's failure to install simple safeguards along the pathway could not be attributed to any policy despite the Government's attempt to link the improvement of the path to issues of national security or the Navy's budget. Gotha, 115 F.3d at 181. According to the court, the case was "not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get." Id. The court emphasized that the discretionary function exception should not be interpreted too loosely, lest the exception defeat the purposes of the FTCA. It observed, "[i]t is clear that if

-8-

the word 'discretionary' is given a broad construction, it could almost completely nullify the goal of the Act." Id. at 179 (citing United States v. S.A. Empresa de Viacao Area Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)).

The court later concluded in Cestonaro v. United States, 211 F.3d 749 (3d Cir. 2000), that the discretionary function exception likewise did not apply. Id. at 751. There a family on vacation in St. Croix in the Virgin Islands parked their rental car in a parking lot within Christiansted National Historic Site, which is owned by the Government and managed by the National Park Service ("NPS"). When they returned to their vehicle they were accosted by two armed men. The husband was shot and died tragically at the scene.

NPS knew that serious crimes had occurred there previously. The plaintiff urged that NPS was negligent in failing to supply adequate lighting, correct a known dangerous condition, or warn others about its existence.

No statute, regulation, or policy required a specific course of conduct on the part of NPS, and the court therefore went on to consider whether NPS's actions and inactions with regard to the parking lot were "susceptible to policy analysis." Id. at 755. In doing so it emphasized that "susceptibility [to policy] analysis is not a toothless standard that the government can satisfy merely by associating a decision with a regulatory

-9-

concern." Id. (quotation marks omitted).  Citing Supreme Court
precedent, the court observed that cases involving "garden
variety decisions" or "the ordinary common-law torts" do not
fall within the discretionary function exception.  Id. (citing
Dalehite v. United States, 346 U.S. 15, 28 & n.19 (1953)).  It
therefore rejected NPS's contention that it failed to add
lighting or post warning signs at the parking lot because its
mission was to return the property to its historic appearance.
Id. at 756.  NPS "fail[ed] to show how providing some lighting,
but not more, is grounded in the policy objectives with respect
to the management of the National Historic Site."  Id. at 757.

        By contrast, in Mitchell v. United States, 225 F.3d
361 (3d Cir. 2000), the Court of Appeals ruled that the decision
of NPS not to repair or redesign the concrete headwall of a
culvert fell within the discretionary function exception.  Id.
at 366.  The plaintiff was driving on U.S. Highway 209 through
the Delaware Water Gap National Recreation Area, which is
managed by NPS, when she swerved off the highway and collided
with the headwall located several feet from the side of the
road.

        While NPS had identified culverts and headwalls along
the road as safety issues, the agency did not have sufficient
funding to address all of the highway-related problems that
existed.  NPS therefore had to "exercise[] discretion in

determining the priority of road repairs and redesigns." Id. at
364.  The court concluded that NPS "was required to balance its
mission of preserving the parklands against the severity of
design flaws and the different levels of deterioration of the
road ...."  Id.  As a result, the discretionary function
exception shielded the United States from suit.  Id. at 366.

Indeed, in several other cases involving national
parks or large tracts maintained in a relative state of nature
by NPS, our Court of Appeals has concluded that the
discretionary function exception protects the Government from
liability.  In Merando v. United States, 517 F.3d 160 (3d Cir.
2008), the court again decided a case involving an accident in
the Delaware Water Gap National Recreation Area.  There the
plaintiff's wife and daughter were riding as passengers in a car
through the New Jersey side of the park.  At one point the car
passed a dead, 27-foot-tall red oak tree that leaned over the
roadway.  The tree fell as the car drove under it, tragically
killing the plaintiff's wife and daughter.

The plaintiff claimed that NPS was negligent in
failing to find and remove the dead tree.  The court explained
that NPS was tasked with managing an expansive natural area.
Id. at 169.  The agency's dilemma in allocating scarce resources
across many thousands of acres to ensure visitor safety while
preserving the park's natural character was central to the

-11-

court's decision that the discretionary function exception
barred the lawsuit.  Id. at 171-74.

　　　　More recently in S.R.P. ex rel. Abunabba v. United
States, 676 F.3d 329 (3d Cir. 2012), the 12-year-old plaintiff
was a visitor to Buck Island Reef National Monument, which, like
Christiansted National Historic Site and the Delaware Water Gap
National Recreation Area, is managed by NPS.  Buck Island lies
1.25 miles to the northeast of St. Croix in the United States
Virgin Islands.  The plaintiff was sitting on the beach with his
feet in shallow water when he was bitten by a barracuda.  He
suffered a severe laceration and nearly lost two toes.  While
signage and an NPS brochure warned of the danger of "cuts from
marine organisms," it merely instructed visitors to treat
barracudas with caution.  The plaintiff, through his mother,
urged that NPS failed adequately to warn visitors of the dangers
posed by barracudas.

　　　　The court held that NPS's decision to refrain from
posting additional signage reflected policy concerns and was
thus protected by the discretionary function exception.  Id. at
336.  Key to the court's reasoning was the primitive setting of
Buck Island, a place "in which virtually unlimited natural
hazards are present."  Id. at 337.  In these areas, NPS "must
make a policy determination as to which dangers are significant
enough to merit specific attention on a warning sign."  Id.

-12-

Because the agency was not aware of any prior similar accidents and could not warn of every conceivable danger at such a location, it needed to exercise the discretion granted to it by Congress in deciding what threats deserve mention in a warning to visitors.  Id.

The court paused to reiterate, however, that the discretionary function exception should not be given such a broad construction as to frustrate the purpose of the FTCA.  Id. at 338.  Citing Supreme Court precedent, the court explained that the Government is subject to suit under the FTCA for ordinary, everyday torts under the FTCA.  Id. (quoting Dalehite v. United States, 346 U.S. 15, 28 (1953)).  It explained, "[W]here the Government is aware of a specific risk and responding to that risk would only require the Government to take garden-variety remedial steps, the discretionary function exception does not apply."  Id.

The body of cases dealing with ordinary mishaps on the premises of a U.S. post office is additionally instructive.  For example, in American Exchange Bank of Madison, Wisconsin v. United States, 257 F.2d 938 (7th Cir. 1958), the court ruled that the discretionary function exception did not protect the Government from liability for a slip and fall on the steps of a post office.  Id. at 941.  "[W]hether a handrail should be installed as a safety measure on wide stone steps ... would seem to

-13-

involve no more discretion than fixing a sidewalk on post office grounds that might be in need of repair." Id.  We further note that our Court of Appeals in Hoefler v. United States, 121 F. App'x 464 (3d Cir. 2005), another case involving a fall on post office steps, reached the substantive issues without raising any question about whether the discretionary function exception vitiated the court's subject-matter jurisdiction.

        The Government argues that if it were to be liable for types of injury that occurred here, TSA employees would have to be dedicated to ascertaining whether passengers are disabled and in need of assistance negotiating the security checkpoint.  Such a requirement, according to the Government, would implicate policy decisions regarding TSA's budget and its discretion in allocating duties among its personnel to carry out its mission.

        We disagree.  Anyone who has ever experienced a security line at an airport knows that the area is full of TSA employees who are incessantly providing directions which must be obeyed and who are keeping an ever-watchful eye on the entire space, and especially on those approaching the x-ray machine and the AIT. Under the circumstances, it is not an onerous burden to expect TSA to monitor the safety of its checkpoint, a closely confined area, for air travelers who carry canes when its numerous employees already repeatedly and intensively interact with each of those travelers.  It is also common knowledge that disabled individuals

-14-

frequently require assistance in navigating our commercial aviation system.  The presence of travelers in wheelchairs as well as those who use canes is an everyday occurrence at airports.

         To hold the Government liable for failing properly to assist an elderly air traveler who carries a cane in making her way through a confined checkpoint simply calls for the diligence and situational awareness already demanded by the agency's obligations to screen passengers for security risks.  It "would only require the Government to take garden-variety remedial steps" which fall outside of those policy decisions that the discretionary function exception was designed to protect from judicial review. S.R.P., 676 F.3d at 338.  The imposition of this sort of accountability would put little, if any, strain on TSA's budget or its personnel in contrast to the situation at our vast national parks.  Likewise, waiver of immunity for a slip and fall in the airport security checkpoint area does not implicate any social, economic, or political policy involving the protection of the United States or its people from terrorists or otherwise involving national security concerns.  The waiver of immunity here does not interfere with TSA's mission any more than exposing the Government to liability for a dangerous pathway at a Navy base or liability for dangerous steps at a post office or liability for a dangerous parking lot at a national historic site interferes with the missions of the agencies involved.  In short, the conduct involved

-15-

here is just the sort of "ordinary common-law tort[]" that Congress had in mind when it enacted the FTCA.  Dalehite, 346 U.S. at 28.

        The discretionary function exception under § 2680(a) of the FTCA does not save the Government from possible liability in this action.  If the exception were to apply here, it would come close to swallowing the FTCA's waiver of governmental tort immunity.  S.R.P., 676 F.3d at 338.  We have subject-matter jurisdiction over plaintiff's claim for damages as a result of the alleged negligence of TSA in operating its security checkpoint with respect to a traveler deprived of the use of her cane.

                                    IV.

        We now turn to the merits where the plaintiff has the burden to prove the Government's negligence.  The Government has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

        In the present case, the Government contends that plaintiff's negligence claim fails as a matter of Pennsylvania law.  Having carefully reviewed the arguments of the parties and the relevant record, however, there are significant gaps in the video evidence and discrepancies in the deposition testimony

                                   -16-

which must be resolved at trial.  Genuine disputes of material
fact exist.  Accordingly, the motion of the Government for
summary judgment will be denied.